STATE of Maine

v.

Charles A. JOBIN.

Supreme Judicial Court of Maine.
Argued May 9, 1986.
Decided May 29, 1986.

Janet Mills, Dist. Atty., Patricia A. Mador, Kevin J. Rugan (orally), Asst. Dist. Attys., South Paris, for plaintiff.

Daniel G. Lilley Law Offices, P.A., Rose Duggan (orally), Daniel W. Bates, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Defendant, Charles A. Jobin, appeals from his conviction of unlawful trafficking in a scheduled drug, 17-A M.R.S.A. § 1103 (1981) following a jury trial in Superior Court, Oxford County. He argues on appeal that his constitutional right to confront the principal prosecution witness was denied when the court improperly excluded evidence contained in the witness's military and employment records and when the court refused to permit meaningful inquiry into two traffic charges against the witness; that his constitutional right to due process of law was denied in that the State failed to provide adequate discovery; that the court erred in excluding certain testimony by the State's expert witness; and that there was insufficient evidence to support the conviction.

We find no merit in the Defendant's arguments, and we affirm the judgment of conviction.

The State's evidence in this case depended heavily on the testimony of Robert Gilbert, who in late 1984 was an undercover narcotics officer with the Rumford Police Department. Gilbert's supervisor gave him names of individuals who were suspected of trafficking in cocaine, and Gilbert's task was to gather information about these individuals.

That assignment led the officer to a Rumford tavern in the evening of December 9, 1984. Inside, Wesley Arsenault struck up conversation with Gilbert. After a short time Gilbert asked Arsenault whether he had any cocaine. The latter replied that he did not. Gilbert then requested Arsenault to ask if the Defendant, standing nearby, had any cocaine to sell. Gilbert gave Arsenault enough money for half a gram of cocaine, and Arsenault and the Defendant left the tavern. They returned a half hour later and, after entering the tavern, signalled to Gilbert to join them in the men's room. Once inside, the Defendant handed Gilbert a white packet containing a white powder, which, when later

analyzed, proved to be cocaine. Gilbert gave the packet to his supervisor, Lieutenant Timothy Bourassa, and the Defendant was subsequently arrested.[1]

The Defendant's first contention is that his constitutional right of confrontation was violated when the Superior Court examined Gilbert's personnel and military records before impounding them and then granted the State's in limine motion to exclude those records as well as evidence of two traffic charges involving Gilbert. The Defendant first asserts that the personnel and military records disclose that Gilbert was hired by the Town of Rumford to escape federal prosecution on other charges. Second, he contends that the District Attorney and Gilbert had an agreement whereby Gilbert would testify against the Defendant in exchange for prosecutorial leniency in the two traffic charges.

■ Our Maine Constitution as well as its federal counterpart afford a defendant the right "[t]o be confronted by the witnesses against him." Me. Const. art. 1, § 6; U.S. Const. amend VI. The right to confront witnesses through cross-examination may be of vital importance in proving bias. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). Thus, where a prosecution witness has agreed to testify against a defendant in exchange for dismissal of charges against the witness, the defendant has the right to cross-examine the witness concerning that agreement. *Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Courts may, however, impose reasonable limits on cross-examination to avoid, among other things, harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginal-

ly relevant. *Id.; see State v. Brown*, 321 A.2d 478, 485 (Me.1985).

■ *In camera* we have carefully examined Gilbert's employment and military records, which the Superior Court had impounded. Nothing in those records supports the Defendant's assertion that Gilbert was hired by the Town in order to escape being prosecuted by the federal government. Neither in those records nor elsewhere do we find any evidence that the prosecutor promised Gilbert favorable treatment on his traffic offenses in exchange for information leading to drug convictions. Accordingly, the Superior Court breached no rule of evidence when it excluded the impounded material and permitted only limited inquiry into Gilbert's traffic offenses.[2] The Defendant has returned from his fishing expedition with nothing whatsoever to support an inference of bias. We conclude that his constitutional right to confront adverse witnesses was not violated.

We turn now to the Defendant's contention that his Fourteenth Amendment right to due process was violated when the State refused to furnish certain discovery materials. He asserts that the State should have provided him with Gilbert's original handwritten notes and the records of the hours Gilbert worked. The Defendant argues that the notes would have helped impeach Gilbert because they would have conflicted with his trial testimony concerning when the exchange of cocaine occurred. With respect to the time records, the Defendant argues that the large number of hours Gilbert supposedly worked would have suggested to the jury that Gilbert had to work hard to escape prosecution himself.

■ A defendant's due process rights are violated when the prosecution with-

---

1. Both the Defendant and Arsenault testified that they were not at the tavern on December 9. Arsenault said he did not know the Defendant then but became acquainted with him later. On his part, the Defendant denied selling cocaine to Gilbert.

2. The two traffic offenses and Gilbert's military and personnel records are not in any way probative of truthfulness or untruthfulness. M.R. Evid. 608(b). Neither of the traffic charges would have been admissible as evidence of a conviction because one had been dismissed and the other was pending at the time of the Defendant's trial. M.R.Evid. 609.

holds evidence favorable to him. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Thus, the prosecution must disclose any evidence of an immunity agreement between it and its witnesses. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Here, the State has steadfastly denied that Gilbert was given immunity from prosecution in exchange for furnishing evidence of narcotics trafficking. The materials sought by the Defendant are not favorable to him in that they do not tend to create a reasonable doubt as to his guilt. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196; M.R.Crim.P. 16(a)(1)(C). Gilbert's original notes would merely have been cumulative, inasmuch as the Defendant was able on this record to impeach the officer concerning the latter's inability to recall the exact time the cocaine was transferred.[3] By themselves the time records would not have supported an inference of bias. We therefore conclude that the Defendant was denied no discovery to which he was constitutionally entitled.

The Defendant's next assertion is that the Superior Court erred in refusing to permit the State's expert witness, a chemist, to testify concerning a discrepancy in the weight of a cocaine sample he tested. Gilbert's supervisor, Lieutenant Bourassa, testified just prior to the chemist and said that he transmitted six samples of white powder to the State Laboratory. Bourassa testified that each sample weighed from a half gram to one and a half grams. In his turn the chemist testified that he identified each sample as being cocaine, and he then gave the weight of each sample. The chemist's testimony concerning the weight of the samples matched Bourassa's except for the fourth sample, which weighed half a gram less.

■ The Superior Court quite correctly refused to permit the chemist to testify concerning this discrepancy. The record clearly reflects that the jury was aware of the discrepancy, so the chemist's testimony was not needed to establish its existence. M.R.Evid. 702; VII J. Wigmore, *Evidence* § 1923 (Chadbourne ed. 1978). The court permitted the Defendant to ask the chemist to account for the discrepancy, which the chemist could not do. Defense counsel was able to develop with the jury his theory that Gilbert took the missing half gram and made up a phony sample to implicate the Defendant. The Superior Court committed no error.

We find no merit in the Defendant's final contention, that there was insufficient evidence that a sale of cocaine occurred.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Defense counsel successfully introduced into evidence a slip of paper on which Gilbert had noted the time of the transfer as 11:50 P.M. At trial, however, Gilbert said the Defendant gave him the cocaine at 9:30 P.M.