Laura H. BRADFORD

v.

Danny G. DUMOND.

Supreme Judicial Court of Maine.

Submitted Jan. 24, 1996.

Decided April 29, 1996.

---

Ann M. Courtney, Charles P. Piacentini, Jr., Murray, Plumb & Murray, Portland, for Plaintiff.

Ian M. Bennie, Susan J. Parcels, Chute & Associates, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant Danny G. Dumond appeals from a judgment of the Superior Court (Cumberland County, *Brodrick, J.*) in an action to partition real estate. The court granted plaintiff Laura H. Bradford one-half of the two parcels of real estate owned in common by the parties. The court adjusted the final division to reflect mortgage payments made by defendant and acts of conversion committed by defendant. On appeal defendant argues that (1) the court erred in ruling that the parties owned equal shares of both parcels of real estate, (2) the court erred in finding defendant liable for conversion of plaintiff's personal property, (3) the court erred in assessing damages for conversion, and (4) the court abused its discretion in limiting defense counsel's cross-examination of plaintiff on the issue of damages. Because the court erred with respect to one parcel of real estate, we vacate in part.

The facts presented at trial may be summarized as follows: The parties started dating in 1983. In August 1984, plaintiff moved in with defendant in a rented camp in Standish. Plaintiff and defendant talked about getting married and started planning their future, including purchasing property together. Plaintiff began to work without pay at a steel yard owned and operated by defendant. Plaintiff and defendant commingled their funds extensively and paid their personal and household expenses primarily with funds from the business.

In August of 1986, the couple purchased a house and a parcel of land abutting the steel yard. ("The Scarborough Property"). The deed conveyed the property to both defendant and plaintiff as joint tenants. The down payment of $35,000 was provided by defendant. The taxes, mortgage payments and insurance payments for the property were paid with funds from his business. Plaintiff performed all of the maintenance and upkeep on the property, including landscaping, while working full-time at the steel yard without pay.

In the spring of 1987, plaintiff began to receive $150 per week for her services at the steel yard. Plaintiff testified that this amount did not accurately represent the value of her services and in fact the funds were deposited in a joint account and used to pay joint expenses.

In January 1983, the couple purchased a camp and a lot of land in Standish. The deed conveyed the property to the parties as tenants in common. Plaintiff provided $8,000 for the down payment. Defendant provided

between $30,000 and $40,000 for the remainder of the down payment and closing costs.[1] Subsequent payments for taxes, mortgage, and insurance were paid from the steel yard account. Plaintiff performed all of the maintenance and upkeep on this property as well while continuing to work at the steel yard.

Problems developed in the relationship and plaintiff moved out permanently in January 1990. She packed a few belongings and drove her Ford Bronco (which she claimed was a gift from defendant, although it was registered in the name of his business) to Maryland to stay with relatives. A week later, plaintiff reported that the Bronco had been stolen; it was later located in defendant's possession. When plaintiff moved back to Maine and inquired about retrieving the rest of her personal property and items the couple jointly owned, defendant threatened to harm her physically if she returned to either property.

After 1990, defendant retained exclusive possession of the two properties and collected rent from a tenant on the Standish property. He has paid all taxes, insurance, and mortgage payments since that time. In addition, he has paid off the outstanding mortgages on both properties.

Plaintiff commenced this action seeking division of the real estate and damages for conversion of her personal property. After a nonjury trial, the Superior Court ruled in favor of plaintiff on all claims. The court found plaintiff's version of the events more credible than defendant's and concluded that the parties had agreed and intended to be joint owners of both parcels.[2] The court then considered each party's contribution in order to fairly and equitably partition the real estate. The court declined to consider defendant's initial contributions towards the purchase of either property, as the court considered both properties to be held in joint tenancy. Although it found that defendant paid all mortgage, tax, and insurance payments, the court offset defendant's con-

tribution with plaintiff's undercompensated services for the business, her services in maintaining both properties, and the fact that defendant enjoyed sole possession of the properties for the period after the breakup and collected rental income which was not shared with plaintiff. Finding the properties equal in value, the court granted the Standish property to defendant and the Scarborough property to plaintiff. The court granted defendant a lien on the Scarborough property for the amount of $58,066, representing defendant's prepayment of plaintiff's half of the outstanding mortgages. This lien was reduced by $17,295, representing the value of the personal property that the court found had been wrongfully converted by defendant. From this judgment, defendant appeals.

## I. Initial Contributions Towards Purchase of Jointly Owned Properties.

The issue of a proper accounting for the down payment made by defendant in purchasing each parcel of real estate is confused by the parties' failure to differentiate between a joint tenancy and a tenancy in common.

The pleadings, the pretrial memoranda, and the exhibits accurately reflect that the Scarborough property was held in a joint tenancy and the Standish property was held in a tenancy in common. Throughout the trial, however, the parties used the loose phrase "joint ownership." As a result, in its judgement the court treated both parcels as though they were held in joint tenancy and, despite the parties' differing views on the treatment of defendant's initial contribution, the court was never disabused of its mistaken belief. Although the trial judge is not to be faulted, the error is obvious and the judgment is tainted by the parties' failure to distinguish between the two forms of joint ownership.

---

**1.** The trial testimony on this figure was conflicting, and the trial court did not make a specific finding on this amount.

**2.** With respect to the Scarborough property, defendant testified that he intended the joint deed

to serve as a substitute for a will and he understood that plaintiff would get the property only if he died. Plaintiff testified that they agreed to joint ownership, and that there was never any discussion of a "will substitute."

In general, joint tenants own equal undivided shares even though their initial contributions may have been unequal. That result is a consequence of the right of ownership that attaches to a joint tenancy. Tenants in common, on the other hand, are presumed to own equal shares, but this presumption may be overcome by evidence, such as evidence of unequal initial contributions, establishing an intention to have unequal shares. *See generally Creteau Principles of Real Estate Law,* Castle Publishing Co., 1977; *see also Hardigan v. Kimball,* 553 A.2d 1265, 1266 (Me.1989) (discussing rights of joint tenants). Thus it is evident that the court erred in failing to consider defendant's initial contribution to the Standish property, held as a tenancy in common. Because this results in the necessity for vacating only a part of the judgment, we proceed to consider the remaining issues.

In addition, defendant argues the court erroneously refused to consider the initial payments he made in purchasing the Scarborough property. Even though this property was held in joint tenancy, defendant argues that *Boulette v. Boulette,* 627 A.2d 1017 (Me.1993), cited by the trial court, is inapplicable because that case dealt with the creation of a joint tenancy *after* the acquisition of the property. Defendant argues that where, as here, the purchase money for the property was extended simultaneously with the creation of the joint tenancy, the joint tenant who extended the purchase money should be credited that amount on partition.

Defendant's argument is contrary to the very purpose of joint tenancy. In *Boulette,* we stated:

> [A]s joint tenants, the parties initially held an undivided one-half interest in the property. The division of property held in joint tenancy should take into account all equities growing out of that relationship. Contributions of the parties to the property prior to the joint tenancy, however, are not equities growing out of the joint tenancy relationship. To allow the consideration of contributions preceding the joint tenancy would defeat joint ownership.

*Boulette v. Boulette,* 627 A.2d 1017, 1018 (Me.1993). *See also Lalime v. Lalime,* 629 A.2d 59 (Me.1993) (where husband deeded his own property to himself and his wife in joint tenancy, the rules of ownership unique to joint tenancy would apply regardless of husband's assertion that the transfer was solely for the purpose of securing a loan and was not intended as a 'true' joint tenancy).

Although it is true that in *Boulette* we did not specifically deal with a simultaneous contribution and creation of a joint tenancy, this issue has been settled in Maine for over half a century. In *Greenberg v. Greenberg,* 141 Me. 320, 323–24, 43 A.2d 841, 842 (Me.1945), we held that the joint tenants owned an equal, undivided share of the property, even when one joint tenant supplied 100% of the purchase price and simultaneously had the land deeded to himself and another as joint tenants.

## II. Co-tenant's Contributions Towards the Properties.

Defendant next argues that the court erred in finding that, after purchase, both parties had contributed equally to the properties. Specifically, defendant argues that plaintiff's performance of housekeeping and maintenance duties should not be considered as a contribution. Defendant also argues that the court erred in finding that plaintiff was undercompensated for the services she provided at the steel yard.

The court's findings as to the value of each parties' contributions are findings of fact. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." M.R.Civ.P. 52(a) (1995). We will not disturb the court's determination of the monetary value of plaintiff's services, as it is supported by competent evidence in the record. The record also supports the finding that plaintiff's maintenance of the properties was in furtherance of the parties' agreement concerning both properties.

## III. Plaintiff's Conversion Claims.

Defendant argues that the court erred in finding that the Ford Bronco belonged to plaintiff because both parties used the vehicle and the certificate of title was issued in

the name of his business, even though the vehicle was registered and insured in plaintiff's name. He argues that he was the true owner of the truck and could not have converted it. The court, however, found that the truck was given to plaintiff as a birthday gift.

■ "[A]n effective inter vivos gift requires three elements: (1) donative intent, (2) delivery with intent to surrender all dominion over the property, and (3) acceptance by the donee." *Bennett v. Bennett*, 587 A.2d 463, 464 (Me.1991), citing *Brackett v. Larrivee*, 562 A.2d 138, 139 (Me.1989). "A change of mind by the donor ... cannot undo th[e] completed gift." *Brackett*, 562 A.2d at 140. Despite the confusion in the documents, sufficient evidence was presented at the trial to permit the court to determine that all elements of a gift had been satisfied. As between the parties, ownership turned on the court's assessment of witness credibility. Such factual determinations will not be overturned.

■ Defendant also argues that because he had an equal right to possession of other jointly-owned personal property, he could not have committed the tort of converting such property simply by retaining possession.

> [T]he gist of conversion is an invasion of a party's possession or right to possession. The Plaintiff must show '(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender.'

*Doughty*, 661 A.2d at 1122, quoting *Chiappetta v. LeBlond*, 505 A.2d 783, 785 (Me.1986). The court did not err in finding that defendant had wrongfully retained possession of goods either solely owned by plaintiff or jointly owned by the parties. Defendant's statement that he would harm plaintiff should she attempt to retrieve her property constituted a sufficient refusal to surrender. With respect to a refund check written in defendant's name alone, retention of the funds despite his knowledge that a portion belonged to plaintiff constituted a conversion.

*See Ocean National Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me.1983) ("[C]onversion entails 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the Plaintiff's rights.'") Plaintiff was not required to ask defendant for the refund after his violent response to her request for her other belongings: "Where the circumstances show that a demand would be useless, a demand is not necessary." *General Motors Acceptance Corp. v. Anacone*, 197 A.2d 506, 524 (Me. 1964).

■ Defendant next challenges the court's computation of damages for conversion of plaintiff's personal property. We review such findings with great deference:

> Generally, we will not substitute our judgment for that of the [fact finder] in assessing damages and will not disturb the [fact finder]'s damage award unless that award is a product of bias, prejudice, improper influence, or was reached under a mistake of law or in disregard of the facts.... Although damages need not be proved to a mathematical certainty, an award must be supported by some evidence of the value of property damaged or expenses incurred. The [fact finder] is entitled to act upon probable and inferential as well as direct and positive proof in determining damages. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability.

*Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990). In a conversion case, the measure of damages "is the value of the property at the time of the unlawful conversion." *Doughty*, 661 A.2d at 1122, citing *General Motors*, 197 A.2d at 525. The evidence in the present case supports the court's award of damages.

## IV. Limitation of Cross–Examination.

Finally, defendant argues that the court erred in limiting the time allowed for defense counsel's cross-examination of plaintiff. Defendant argues that detailed cross-examination of plaintiff on several disputed matters was necessary, and that defendant was un-

able, because of the time limitation, to fully cross-examine plaintiff on her allegations regarding the value of her personal items.

We have previously held that "[a] trial judge may exercise control over the mode and order of witness interrogation to avoid needless consumption of time and the harassment of witnesses." *Maine Real Estate Commission v. Anderson,* 512 A.2d 351, 353 (Me.1986); *see also State v. Jobin,* 510 A.2d 527, 529 (Me.1986) ("Courts may ... impose reasonable limits on cross-examination to avoid, among other things, harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant,"); *Colony Cadillac & Oldsmobile,* 505 A.2d 98, 100 (Me.1986); *Depositors Trust Co. v. Blanchard,* 377 A.2d 101, 104 (Me.1977) (upholding the court's disallowance of an in-court experiment that would take up too much time).

■■■■ Defendant must show that the court abused its discretion and that defendant suffered prejudice as a result: "[T]he judgment will not be vacated unless the [erroneous limitation on cross-examination] prejudiced a substantial right of [the Appellant]. A substantial right has not been affected if it is highly probable that the error did not affect the judgment." *Jucius v. O'Kane,* 511 A.2d 1053, 1056 (Me.1986).

■■■ We find no abuse of the court's discretion. The record demonstrates that defense counsel had ample time to cross-examine plaintiff. Defense counsel chose to repeat many of the same questions asked on direct without eliciting new information or inconsistencies. Defense counsel chose not to ask leading questions, but rather allowed plaintiff to engage in lengthy narrative answers. Finally, defense counsel could easily have contradicted plaintiff's testimony through direct examination of defendant but declined to do so. The court did not abuse its discretion in ensuring that the trial proceeded in accord with the previously announced schedule.

The entry is:

Judgment vacated in part. Remanded for further proceedings consistent with the opinion herein.

All concurring.