STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-01-27

DH M - KC N - 4/1 2002

ROBERT HUFF, SR.,

Plaintiff

v.

DEBORAH HUFF,

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2003

**DECISION AND ORDER**

This matter is before the court after nonjury trial. Plaintiff and defendant were married in 1974, divorced in 1978, and reconciled in 1978 or 1979. They cohabitated for 21 years separating in August of 2000 and after the births of three children born in 1978, 1980, and 1981. In June of 1990, the parties bought a lot of land for $18,000 from a relative taking the property as joint tenants. They borrowed $30,000, secured by a mortgage, to pay for the purchase of the land as well as a used mobile home, a mobile home concrete pad, a well, and a septic system.

In April of 1992, plaintiff, who had been regularly employed, suffered a work-related injury and received workers' compensation payments until he entered into a lump sum settlement in 1997. This settlement was in the amount of $55,000 representing future earnings for his disability according to his life expectancy. At the time of the lump sum settlement, he had received $28,124.17 in wage replacement. Of the $55,000 received, he utilized $27,280.17 as payment in full to discharge the mortgage on the home property. Since 1996, defendant has been subsisting on Social Security income.

For the period from 1990 to 2000, defendant has been employed in all years except 1997 and 1999. Her income has varied from a low of $210 in 1996 to a high

$9,668 in the year 2000. In 1995 she sustained injuries in a motor vehicle accident which claim was settled for $9,786. Defendant deposited this amount into joint accounts with the plaintiff in a credit union.

In 1996, the parties obtained a building permit to replace their mobile home with a 28 foot by 36 foot building which was constructed through the use of the labor of the plaintiff and the defendant and other family members. In addition to extinguishing the previous mortgage debt from the use of his workers' compensation lump sum settlement, the plaintiff contributed over $23,000 of his settlement toward materials in building the house.

In July of 2001, the parties contemplated sale of the house and land and obtained a market analysis for that purpose by a real estate broker. The market analysis, presented as an exhibit, indicated a suggested fair market value of $45,163. However, both parties testified that they believed the value of land and buildings to be $72,000 and for a short period of time, they did put it on the market for $70,000. After approximately six months, the property was removed from the market and no other attempts were made for sale.

Apparently, during the course of their relationship, both parties suffered from various forms of anxiety or stress. For many years, at least eight, the defendant was prescribed medication for that anxiety as well as for high blood pressure. During these times a witness describes defendant at various levels of influence by the medications. In August of 2000, defendant left the home under hostile circumstances. Since she had no motor vehicle, she could take nothing with her except clothing and some knickknacks. Apparently, there then developed a period of time in which plaintiff was making efforts to remove defendant's interest as a joint tenant in the property. This involved an effect on their daughter who appears to have been caught in the middle of

the issue. At some point, in the Fall of 2000, the plaintiff became hospitalized for stress, presumably affected by this dispute. In an attempt to resolve the issue and to protect his domestic partner, the boyfriend of the parties' daughter had the daughter type up a document stating as follows:

> I, Deborah Huff, abandon all rights to the said property Map R-3 Lot No. 28 West Road in the town of Litchfield.

> I, Deborah Huff, give all rights to Robert E. Huff to the said property Map R-3 Lot No. 28 of the West Road town of Litchfield to sell or to keep with no inference.

> Wednesday, September 27, 2000.

This document bears the signature of Deborah J. Huff dated October 1, 2000, a witness Ken Williams, a signature of Robert E. Huff dated October 1, 2000. The document was acknowledged as "signed before me on this 5 Day of Feb. 2001 by _____ _____. Notary public signature of Muriel D. Bouchard. According to the witness, Mr. Williams, partner of the daughter, at the time the defendant signed the document, she was, in his words, "not all there." It appears undisputed that defendant was asked to sign the document by her daughter and Mr. Williams under the guise that she should "sign so Dad will be all right." She needed to sign the transfer because it was needed to "get Dad out of the hospital," and also to "get Dad to leave me alone."

In his complaint, the plaintiff seeks to quiet title by arguing that the property interest of the defendant was conveyed to him on October 1, 2000, and that defendant should be estopped from claiming any right to the property. The court is satisfied that the document upon which the plaintiff relies is void for a number of reasons. First, it was clearly executed under conditions contrary to being a free act and deed of the defendant. Secondly, the signatures were not acknowledged at the time of execution. Third, the signatures were not made in the presence of the notary public. Fourth, the

3

acknowledgement alleged authenticity to signatures alone but did not acknowledge them to be of the parties' free act and deed. Clearly, the plaintiff must fail on the first count of his complaint.

In count II, plaintiff requests equitable partition of the property. At the present time, plaintiff resides in the property with his present wife who moved in with him in January of 1991. She is fully employed and participates in contributions to the maintenance and improvements on the property. Plaintiff depends upon his Social Security Disability. Defendant remains fully employed but has no interest or ability to purchase the property.

The parties purchased the land as joint tenants and have held title in that form since then. The purchase of the mobile home, preparation of the land for use of a residence, and basic construction of the home and garage were joint efforts of the parties. The court finds no distinction in contribution between the parties realizing that plaintiff put financial contributions and personal labor directly into the construction while defendant paid household expenses and maintained the home, including caring for the children. Approximately one-half of the workers' compensation lump sum settlement was utilized by the plaintiff in paying off the original mortgage on the property. The other half of that lump sum settlement was utilized to purchase materials to build the house. Of the $55,000 lump sum settlement based upon a life expectancy of 35.5 years, the parties cohabitated for four years. Therefore, to the extent the lump sum settlement represented future earnings, four years of that amount, or $6,197, was part of a joint contribution. In addition, defendant contributed $1,000 of her tax refund for construction of the garage and the $9,786 received for her personal injury was contributed to the relationship of which $5,000 was used by the plaintiff to refinance a truck and purchase furniture.

4

Since March of 2001, the plaintiff, with the assistance of his wife, has made improvements to the property. These include removal of a living room wall, purchase of carpet, construction of a closet, development of a living room, sheetrock, and other improvements. They also added a sunroom. The net effect was to generally improve the appearance and livability of the home but, in fact, it also removed a bedroom thereby affecting the value of the home. The court finds the cost of the improvements to be $9,600. In the absence of specific evidence in that regard, the court will consider one-half of that value as a diminution of overall value for the loss of the bedroom.

The plaintiff believes that the value of the property is $55,000. The defendant believes the value of the property is $72,000. We are two years past the market analysis and the town of Litchfield places its valuation for tax purposes according to the taxable date of April 1, 2001, at $55,320 attributing $19,000 value to the land and $36,320 to the building. There is no mortgage and the property is fee and clear. Taking into consideration the standard tax valuation as being something less than 100% of true fair market value and attributing one-half of the improvements made to the property since March of 2001, the court concludes that a reasonable value of the property in question to be $65,000. Attributing to that value, a portion of the plaintiff's lump sum workers' compensation settlement as being a part of unearned future earnings, the court applies $25,000 contribution to the value by the plaintiff which, under normal circumstances, would be represented by an outstanding mortgage. Inasmuch as future earnings were used for the purposes of avoiding such mortgage, the court believes this is proper equitable application of that factor. This would conclude that the plaintiff and defendant are joint owners of property with an attributable value of $40,000. Joint tenants own equal undivided shares even though their initial contributions may have been unequal. That result is a consequence of the right of ownership that attaches to a

joint tenancy. *See Bradford v. Dumond*, 675 A.2d 957 (Me. 1996) as cited in *Ackerman v. Hojnowski*, 2000 ME 147, 804 A.2d 412. Amounts that the parties spent to improve property after it has been acquired should be taken into consideration in dividing the proceeds of the sale of the property. *See Libby v. Lorrain*, 430 A.2d 37 (Me. 1981). On the other hand, until separation, an increase in value to the property after acquisition should equally be the result of contribution by both parties. *Ackerman v. Hojnowski*, at 416.

The entry will be:

Judgment for defendant on count I of the complaint; judgment for plaintiff for partition on count II of the complaint; within 90 days of this judgment, plaintiff will pay to defendant $20,000 with interest from September 1, 2000, at the prejudgment rate of interest, upon receipt, defendant will execute and deliver to plaintiff a deed releasing all her right, title and interest in the subject property; in the event plaintiff is unable or unwilling to make said payment by that date, the court ORDERS the property to be sold and the proceeds to be divided between the parties after payment of all expenses of 31% to the defendant and 69% to the plaintiff; neither party is awarded costs.

Dated: April 11, 2003

Donald H. Marden
Justice, Superior Court

6

ROBERT E. HUFF, SR.  - PLAINTIFF
1329 WEST ROAD
LITCHFIELD ME 04350
Attorney for: ROBERT E. HUFF, SR.
ANTHONY FERGUSON
FALES & FALES PA
PO BOX 889
LEWISTON ME 04243-0889


vs
DEBORAH HUFF  - DEFENDANT
26 ELM STREET
LEWISTON ME 04240
Attorney for: DEBORAH HUFF
E JAMES BURKE


621 MAIN STREET

LEWISTON ME 04240

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-RE-2001-00027


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: QUIET TITLE
Filing Date: 07/16/2001

# Docket Events:

08/31/2001 FILING DOCUMENT - COMPLAINT FILED ON 07/16/2001

08/31/2001 Party(s):  ROBERT E. HUFF, SR.
           ATTORNEY - RETAINED ENTERED ON 07/16/2001
           Plaintiff's Attorney: ANTHONY FERGUSON

08/31/2001 Party(s):  DEBORAH HUFF
           ATTORNEY - RETAINED ENTERED ON 07/26/2001
           Defendant's Attorney: E JAMES BURKE

08/31/2001 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 07/23/2001
           MAILED TO ATTY.

08/31/2001 Party(s):  DEBORAH HUFF
           SUMMONS - CIVIL SUMMONS FILED ON 07/16/2001

08/31/2001 Party(s):  DEBORAH HUFF
           RESPONSIVE PLEADING - ANSWER FILED ON 07/26/2001

08/31/2001 ORDER - SCHEDULING ORDER ENTERED ON 07/26/2001
           DONALD H MARDEN , JUSTICE
           DISCOVERY DEADLINE IN MARCH 26, 2001.

10/01/2001 Party(s):  ROBERT E. HUFF, SR.
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/01/2001
           Plaintiff's Attorney: ANTHONY FERGUSON
           PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS; AND PLAINTIFF'S INTERROGATORIES
           PROPOUNDED TO DEFENDANT DEBORAH HUFF SERVED ON E. JAMES BURKE, ESQ. ON 9/27/01.

10/01/2001 Party(s):  ROBERT E. HUFF, SR.