STATE OF MAINE
YORK, SS.

SUPERIOR COURT
Civil Action
Docket No. CV-14-0191

JOHN R. BARRON,

Plaintiff,

v.

DECISION AND ORDER

SHAPIRO & MORLEY, LLC and
JPMORGAN CHASE BANK, N.A.

Defendants.

Plaintiff John Barron brings a four-count complaint against the law firm of Shapiro & Morley, LLC ("Shapiro & Morley"), and JPMorgan Chase Bank, N.A. ("Chase") arising out of the distribution of surplus funds following the sale of Barron's home after a foreclosure. Barron asserts claims for conversion, intentional infliction of emotional distress, unfair trade practices, and civil conspiracy. Defendant Shapiro & Morley moves for summary judgment. Defendant Chase previously moved to dismiss all counts.

## I.  Facts[1]

Shapiro & Morley represented Chase in an action in the District Court to foreclose upon plaintiff John Barron's property at 616 West Shore Drive in Acton. (Def.'s

---

[1] Shapiro & Morley filed a 33-paragraph statement of material facts along with its motion as required by the rules. Plaintiff filed an opposing statement of material facts denying two of the 33 paragraphs, qualifying six paragraphs and admitting the remaining 25 paragraphs. Included in the opposing statement is a 69-paragraph additional statement of material facts pursuant to Rule 56(h)(2). Shapiro & Morley filed a reply denying most and objecting to nearly all of the 69 paragraphs, citing various grounds including relevance, materiality, inadequate record support and recitation of legal conclusions as facts. The court agrees with many of the objections. To the extent that either party's statement of material facts or additional statement of material facts sets forth statements that are irrelevant, immaterial, do not have adequate record support and/or are conclusory legal statements as opposed to statements of facts, the court does not rely on them for purposes of this motion.

1

S.M.F. ¶ 1.) The District Court entered a foreclosure judgment on July 19, 2013. (Def.'s S.M.F. ¶ 2.) The foreclosure judgment provided by agreement an extended redemption period of 180 days. (Def.'s S.M.F. ¶ 9(a); Ex. 3.) Barron was unable to redeem the property during the extended redemption period as he was unable to secure the funds. (See Def.'s S.M.F. ¶¶ 3-4; Pl.'s Opp. S.M.F. ¶5.)

Chase, through Shapiro & Morley, published notice of public sale of the property. (Def.'s S.M.F. ¶ 8.) The foreclosure sale occurred on March 6, 2014. (Def.'s S.M.F. ¶ 9.) John Roberge ("Roberge") was the highest bidder, bidding $160,000 and entered a purchase and sale agreement with Chase. (Def.'s S.M.F. ¶¶ 10-11.) The closing occurred on July 16, 2014, at which time Roberge produced the $155,000 balance of the agreed-upon sale price. (Def.'s S.M.F. ¶ 14.) Shapiro & Morley deposited the funds in its client trust account. (Def.'s S.M.F. ¶ 15.) Chase received $118,178.49 from the proceeds of the sale on July 31, 2014. (Def.'s S.M.F. ¶ 16.)

Prior to Chase going through with the sale to Roberge, Barron had made efforts to negotiate and pay off the amount owed to Chase. (Pl.'s Add'l S.M.F. ¶¶ 14-15.)

Following the July 16, 2014 closing Barron sought distribution of the surplus, and his counsel prepared and sent notice of intent to file an unfair trade practices act claim. (See Pl.'s Add'l S.M.F. ¶¶ 25-27; Def. Obj. to Add'l S.M.F. at 17-18)

On September 9, 2014, Shapiro & Morley filed a report of sale, which set forth various terms, including providing for the amount of $41,820.94 to be distributed to Barron as surplus proceeds from the sale. (Def.'s S.M.F. ¶¶ 18-20.) The funds would be distributed either after the 30-day objection period following the filing of the report of sale or upon Barron waiving any objection to the amount. (Def.'s S.M.F. ¶ 20.)

On September 11, 2014, Barron went to Shapiro & Morley offices in person to demand the surplus funds. (Pl.'s Add'l S.M.F. ¶¶ 32-35.) The firm declined to release

2

the funds at that time. The firm's refusal and delay in releasing the funds is the conduct at the core of plaintiff's claims in this matter.

On October 9, 2014, Barron filed an objection to the report of sale. (Def.'s S.M.F. ¶ 21.) Barron disputed the amount and requested discovery and an evidentiary hearing. (Def.'s S.M.F. ¶ 22.) On October 23, 2014, $41,820.94—the same amount listed in the report of sale—was distributed to Barron by Shapiro & Morley. (Def.'s S.M.F. ¶ 23.) Barron deposited the funds in his bank account. (Def.'s S.M.F. ¶ 24.) Barron has continued to assert his right to additional funds—roughly $3,000—he believes is owed as surplus. (Pl.'s Add'l S.M.F. ¶¶ 25-33.)

It is customary for Shapiro & Morley to wait until the conclusion of the objection period after the report of sale is filed to disperse surplus funds. (Def.'s S.M.F. ¶ 25.) Barron told defendants he desperately needed the surplus funds for shelter, transportation, and food. (Pl.'s Add'l S.M.F. ¶ 47.) Barron alleges he felt stressed and depressed during the period of time he had to wait for the surplus funds to be distributed to him. (Def.'s S.M.F. ¶ 28.) He lived out of his car before the foreclosure sale and did so after he received the surplus funds. (Def.'s S.M.F. ¶ 29.) He has not been diagnosed with any mental condition or received any treatment as a result of the defendants' conduct in this case. (Def.'s S.M.F. ¶¶ 30-31.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). "To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her

3

cause of action." *Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842. "Summary judgment is appropriate even when concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821.

Plaintiff asserts claims for conversion, intentional infliction of emotional distress, unfair trade practices, and civil conspiracy all arising out of defendants' delay in paying him the $41,820.94 surplus.

Defendants make a number of arguments in support of summary judgment on all four claims. They argue first that the District Court proceeding is the exclusive venue to seek remedies in a foreclosure proceeding, and Plaintiff is thus barred from seeking relief in this Superior Court action. Defendants also contend that no duty of care was owed by Shapiro & Morley to Mr. Barron, an adversary; that Maine law does not recognize a cause of action for delay in distributing surplus proceeds from a foreclosure sale, and that plaintiff has failed to put forth prima facie evidence to survive summary judgment on his claims of conversion, intentional infliction of emotional distress, unfair trade practices and civil conspiracy. The court need only address several of these contentions in order to arrive at its conclusion that the motion for summary judgment should be granted.

## B. Duplicity: District Court versus Superior Court

Defendants contend that plaintiff must find the relief he seeks in this case in District Court, not Superior Court. It was the District Court that issued the foreclosure judgment and was overseeing distribution of the surplus. If plaintiff had an issue with the timeliness of the surplus distribution, defendants maintain he should have filed an

4

appropriate motion there rather than initiate an entirely new proceeding in Superior Court.

The doctrine of duplicity provides a court with discretion to dismiss an action that is duplicative of a previously filed action. *See Geary v. Stanley*, 2007 ME 133, ¶ 14, 931 A.2d 1064. "[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997) (citation omitted) (quotation omitted). "In addition, there must be the same rights asserted and the same relief prayed for." *Id.*

Duplicity does not apply here for the simple reason that the claims and relief sought in this case are distinctly different from the relief sought (or fully available) in District Court. In the District Court foreclosure proceeding, plaintiff perhaps could have filed a motion to enforce to compel earlier distribution of the surplus funds (though, it is unclear that he had a basis for such relief) or a motion for contempt if he believed that the funds were not being disbursed in accordance with the requirements of the foreclosure judgment.

In the instant Superior Court action, plaintiff seeks relief beyond return of the surplus; he seeks additional relief, including damages for emotional distress and alleged unfair trade practices. And, for this type of legal relief, there is a right to a jury trial. *See Portland v. De Paolo*, 531 A.2d 669, 671 (Me. 1987). This action in Superior Court is not duplicative and defendants are therefore not entitled to summary judgment on this ground.

### C. Conversion

A claim for conversion requires the plaintiff demonstrate "a property interest in the goods" and "the right to their possession at the time of the alleged conversion." *Bradford v. Dumond*, 675 A.2d 957, 962 (Me. 1996) (quotation marks omitted). "The crux

of a claim for conversion is that the plaintiff's interest in and right to his own property have been, in fact, seriously interfered with." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 22, 48 A.3d 774.

In determining whether a defendant's interference is sufficiently "serious" to rise to a tortious level, "the court should consider the extent and duration of the actor's exercise of dominion or control; the actor's good faith; the extent and duration of the resulting interference with the other's right to control; the harm done; and the inconvenience and expense caused to the owner." *Id.* (citing Restatement (Second) of Torts § 222A). The inquiry is "fact-specific" and "a question of degree." *Id.*

"[O]ne who acquires transient possession that does not interfere substantially with the plaintiff's rights" is not a converter. 1 Dan B. Dobbs, *The Law of Torts* § 66 at 183 (2d ed.). "Not every failure to deliver upon demand . . . will constitute a conversion." *Prosser and Keeton on Torts*, at 99 (5th ed.). If the defendant acts in good faith and explains the delay to the rightful owner, no action for conversion will lie. *See id.* at 100.

The essence of the plaintiff's conversion theory is that defendant Shapiro & Morley[2] effectively converted the surplus funds by not distributing them to him sooner, after he made several demands for the proceeds and explained his dire financial situation. Plaintiff further states that by forcing him to either wait the entire 30-day objection period or waive objections to the report of sale, Shapiro & Morley unlawfully "squeezed" him. Plaintiff asserts that waiving an objection would have deprived him of

---

[2] Plaintiff has acknowledged that the conversion count is the central claim in this case. The specific allegations as to Chase with regard to this claim are vague or indistinguishable, and plaintiff frames many allegations by referring generally to "defendants." Any liability for conversion as to Chase appears to be wholly derivative of Shapiro & Morley's conduct because the law firm held the foreclosure sale proceeds in a client trust account. There is no allegation Chase ever exercised independent dominion or control over Barron's surplus funds.

6

thousands of dollars—the sum plaintiff asserts Chase was overpaid and thereby reduced the surplus to which he was entitled.

Defendants contend this does not rise to conversion because they had no intent to exercise "dominion or control" over the surplus proceeds in a manner inconsistent with plaintiff's rights. Instead, defendants claim they lawfully held and later distributed the surplus pursuant to the procedures set forth in 14 M.R.S. § 6324, which governs distribution of foreclosure sale proceeds. In relevant part, the statute provides:

> After first deducting the expenses incurred in making the sale, the mortgagee shall disburse the remaining proceeds in accordance with the provisions of the judgment. The mortgagee shall file a report of the sale and the disbursement of the proceeds therefrom with the court and shall mail a copy to the mortgagor at the mortgagor's last known address. This report need not be accepted or approved by the court, provided that the mortgagor or any other party in interest may contest the accounting by motion filed within 30 days of receipt of the report, but any such challenge may be for money only and does not affect the title to the real estate purchased by the highest bidder at the public sale. Any deficiency must be assessed against the mortgagor and an execution must be issued by the court therefor. . . . Any surplus must be paid to the mortgagor, the mortgagor's successors, heirs or assigns in the proceeding.

14 M.R.S. § 6324.

Based on the undisputed facts, defendants complied with the foreclosure judgment and the statute. Neither the judgment itself nor the plain language of Section 6324 imposes a specific timetable governing disbursement of surplus funds. Shapiro & Morley was a lawful, transient possessor of the surplus funds, and so acted in the context of an ongoing proceeding in District Court to finally account for the sale proceeds and close out the foreclosure proceeding. The firm was under no legal obligation to disburse the funds earlier or upon Barron's demand. Plaintiff offers no legal authority to support the proposition that Shapiro & Morley was required to distribute the surplus at an earlier date in this process. Moreover, as noted above,

7

plaintiff could have filed a motion in the District Court to enforce the judgment and mitigated any delay had there been grounds for doing so.

Shapiro & Morley did not fail to act in good faith in adhering to the foreclosure judgment, the statute, and its own customary procedure for disbursing surplus proceeds. Defendants are entitled to summary judgment on the conversion claim.

### D. Unfair Trade Practices Act

Under Maine's Unfair Trade Practices Act (UTPA), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S. § 207. "Trade" and "commerce" are broadly defined to include:

> the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.

5 M.R.S. § 206(3). "[A]n unfair or deceptive act 'must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided.'" *Bangor Publ'g Co. v. Union St. Mkt.*, 1998 ME 37, ¶ 7, 706 A.2d 595.

A person is not a "consumer" with respect to an opposing law firm in the context of litigation, and cannot reasonably have expectations of commercial fairness therefrom. Plaintiff offers no authority to support such a proposition. Even assuming an individual could maintain a UTPA claim under these circumstances, the conduct at issue in this case is not "unfair or deceptive" within the meaning of the statute.

8

At oral argument, plaintiff's counsel conceded that the UTPA claim is principally based upon and derivative of the conversion claim. For the same reasons the conversion claim fails, the UTPA claim fails.[3]

### E. Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress are as follows:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18.

Defendants focus upon the fourth required element of this claim—the severity of the emotionally distress caused—and contend that plaintiff has not met his burden to defeat summary judgment as to this element. To put forth prima facie evidence that the emotional distress is adequately "severe," a plaintiff must establish either (1) the "emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm," or (2) "'severe' emotional distress

---

[3] In addition to the conversion ground, plaintiff points to other bases for a UTPA claim, namely that he was not given notice of the public sale, that the public sale did not timely conclude, and that he was prevented from attempts to retain the property after the redemption period expired. The court finds no merit in these contentions. The record does not support plaintiff's assertion that defendants did not send notice of the public sale. (See Def. JPMorgan Chase Bank, N.A.'s Mot. Dismiss Ex.; Def.'s S.M.F. ¶ 8; Def. Obj. to Add'l S.M.F. at 9); *see also* 14 M.R.S. § 6323(2). Maine law does not require a public sale to close within 30 days. *See* 14 M.R.S. § 6323(1). After the redemption period expired (and in this case it was an extended redemption period), plaintiff's rights in and to the subject property expired, and Chase was under no obligation to give plaintiff further opportunities to redeem or reinstate. 14 M.R.S. § 6323(1) ("The mortgagee, *in its sole discretion*, may allow the mortgagor to redeem or reinstate the loan after the expiration of the period of redemption but before the public sale.") (emphasis added); *Keybank v. Sargeant*, 2000 ME 153, ¶ 38, 758 A.2d 528; *In re Mckinney*, 344 B.R. 1 (D. Me. Bankr. 2006); (Def. JPMorgan Chase Bank, N.A.'s Mot. Dismiss 5-6).

may be inferred from the 'extreme and outrageous' nature of the defendant's conduct alone." *Lyman v. Huber*, 2010 ME 139, ¶¶ 22-23, 10 A.3d 707. "Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable" and inadequate to state a cognizable claim. *Schelling v. Lindell*, 2008 ME 59, ¶ 26, 942 A.2d 1226.

Having concluded that the conduct at issue does not constitute conversion and does not amount to a violation of the UTPA, it follows that defendants' conduct does not rise to the "extreme and outrageous" nature such that "severe" emotional distress can be inferred. Plaintiff must therefore put forth prima facie evidence he suffered "objective symptoms demonstrating shock, illness, or other bodily harm." *Lyman*, 2010 ME 139, ¶¶ 22-23, 10 A.3d 707.

Plaintiff alleges that he faced homelessness, hunger, and was desperate for funds to provide himself with basic necessities. Notwithstanding these allegations, plaintiff's assertion that he suffered extreme emotional distress is vague. No objective symptoms of emotional disturbance are alleged beyond stress he allegedly experienced related to his dire financial circumstances. There is no allegation of mental health diagnosis, condition or treatment relating to these circumstances. Plaintiff was surely upset, but "[d]istress, irritation, and emotional upset may, in fact, be a regular result of [facing a foreclosure]. Such distress, however, will rarely constitute the kinds of damages that are 'so severe' that a reasonable person could not be expected to carry on." *Schelling*, 2008 ME 59, ¶ 26, 942 A.2d 1226.

The court, therefore, concludes that based on the instant record the claim for intentional infliction of emotional distress fails because the emotional distress was not sufficiently severe for purposes of a prima facie case.

10

### F.  Civil Conspiracy

The claim for civil conspiracy rises or falls on the success or failure of plaintiff's other tort claims. *See Cohen v. Bowdoin*, 288 A.2d 106, 110 (Me. 1972) (civil conspiracy is not a stand alone tort, but rather a derivative cause of action that requires a separate tort to state a claim). Because the above causes of action fail, this claim fails.

### III.  Order

For the foregoing reasons, the motion for summary judgment is GRANTED as to both defendant Shapiro & Morley and defendant JPMorgan Chase Bank, N.A.[4]

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED.**

DATE:    March 25, 2016

Wayne R. Douglas
Justice, Maine Superior Court

---

[4] Defendant JPMorgan Chase Bank, N.A. filed a motion to dismiss at the outset of this action. The grounds for that motion overlap substantially with the issues in the summary judgment motion.  Because the court has considered all issues in the context of the expanded summary judgment record, it is appropriate to treat Chase's motion as one for summary judgment and to grant summary judgment for Chase as well.  *See Moody v. State Liquor & Lottery Commission*, 2004 ME 20, ¶ 8, 843 A.2d 43; M.R. Civ. P. 12(b) (court has discretion to convert motion to dismiss into motion for summary judgment where matters outside the pleadings considered provided opposing party has fair opportunity to present material in opposition). Because plaintiff's claims against Chase are derivative of the claims against Shapiro & Morley and plaintiff had a full and fair opportunity to conduct discovery and present evidence to support its claims against the firm, the court concludes that converting Chase's motion to dismiss into one for summary judgment is appropriate.

11