2011 ME 133

**Edwin MITCHELL**

v.

**ALLSTATE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued:  June 14, 2011.
Decided:  Dec. 22, 2011.

Marc N. Frenette, Esq. (orally), Skelton, Taintor & Abbott, Auburn, for appellant Edwin Mitchell.

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, for appellee Allstate Insurance Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] In this appeal, we are asked to determine whether an insurer had a duty to defend a policyholder against a complaint alleging, among other things, that the policyholder converted another person's lobster traps or gear. Edwin Mitchell appeals from the entry of a summary judgment in the Superior Court (Knox County, *Hjelm, J.*) in favor of Allstate Insurance Company on Mitchell's complaint for breach of contract and from the denial of Mitchell's motion for partial judgment on the pleadings. The Superior Court concluded that Allstate had no duty to defend Mitchell in the separate liability action because a policy exclusion for certain intentional acts applied. We conclude that Allstate did have a duty to defend, and we vacate the judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] Mitchell is a lobster fisherman working in the waters off Matinicus Island. In September 2008, Victor Ames sued twenty-three people, including Mitchell, numerous other lobster fishermen on Matinicus Island, and certain state officials. Ames alleged generally that a group of Matinicus Island lobster fishermen had conspired to prevent him from fishing for lobster in the area. Among other things, Ames's second amended complaint included a cause of action against Mitchell for conversion based on Mitchell's alleged participation in a "fishermen's group" that "destroyed, converted, molested and ren-

dered useless" Ames's lobster traps and fishing gear near Matinicus Island.

[¶ 3] At all relevant times, Mitchell held a Deluxe Homeowners Policy with Allstate Insurance Company. The policy included "Coverage X: Family Liability Protection," which provided Mitchell with liability insurance for "damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." The policy defined an "occurrence" as "an accident . . . resulting in **bodily injury** or **property damage**." "Property damage" was defined to mean "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." By the policy's terms, Allstate agreed to provide a defense if the policyholder was sued for such damages "even if the allegations are groundless, false or fraudulent."

[¶ 4] The policy contained several coverage exclusions, including the following:

*Losses We Do Not Cover Under Coverage X* [Family Liability Protection]:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of any **insured person.** This exclusion applies even if:

   a) such **insured person** lacks the mental capacity to govern his or her conduct;

   b) such **bodily injury** or **property damage** is of a different kind or de-

gree than intended or reasonably expected; or

   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

[¶ 5] After being served with Ames's complaint, Mitchell contacted Allstate, which declined to provide coverage. Mitchell retained his own counsel and was successful in defending himself against the Ames suit, but he states that he incurred approximately $13,625.52 in attorney fees and litigation costs.

[¶ 6] Mitchell later filed a complaint against Allstate in the Superior Court for breach of contract[1] in which he alleged that Allstate had breached its duty to defend Mitchell in the Ames litigation.[2] Mitchell attached to his complaint a copy of the Allstate policy.

[¶ 7] Mitchell moved for partial judgment on the pleadings against Allstate, and Allstate moved for summary judgment. *See* M.R. Civ. P. 12(c), 56. The court concluded that the claim for conversion failed to allege property damage that would fall within the policy's coverage and that the intentional acts exclusion applied. Concluding that Allstate had no contractual duty to defend Mitchell, the court granted Allstate's motion for summary judgment and denied Mitchell's motion for

---

1. Mitchell also sued another insurance company in his complaint, but the court dismissed that claim with Mitchell's consent.

2. A dispute regarding an insurer's duty to defend is ordinarily brought as a request for a declaratory judgment rather than a breach of contract claim. *See, e.g., York Ins. Group of*

*Me. v. Lambert*, 1999 ME 173, ¶ 3, 740 A.2d 984. The breach of contract action is an acceptable substitute here, however, because the duty to defend arises from contract and Mitchell seeks contract damages for costs incurred in defending against the now-resolved Ames lawsuit.

partial judgment on the pleadings. Mitchell appealed.

## II. DISCUSSION

[¶ 8] The court addressed Mitchell's motion for partial judgment on the pleadings, M.R. Civ. P. 12(c), together with Allstate's motion for summary judgment, M.R. Civ. P. 56. Both a ruling on a motion for judgment on the pleadings and a ruling on a motion for summary judgment are reviewed de novo. *See Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 15, 11 A.3d 308; *Cunningham v. Haza*, 538 A.2d 265, 267 & n. 2 (Me.1988). Because the legal analysis of an insurer's duty to defend involves solely a comparison of the allegations in the underlying complaint with the provisions of the insurance policy and is a question of law, *see Penney v. Capitol City Transfer, Inc.*, 1998 ME 44, ¶ 4, 707 A.2d 387, our de novo review of this matter is identical whether considered pursuant to Rule 12(c) or Rule 56. We therefore proceed to address whether Allstate had a duty to defend Mitchell as a matter of law. To do so, we first examine the legal standards governing an insurer's duty to defend and then determine whether such standards required Allstate to defend Mitchell in the separate Ames litigation based on the language of the insurance policy.

### A. An Insurer's Duty to Defend

[¶ 9] To determine whether an insurer has a duty to defend, we compare the allegations of the underlying complaint with the coverage provided in the insurance policy. *Id.; Commercial Union Ins. Co. v. Royal Ins. Co.*, 658 A.2d 1081, 1082 (Me.1995); *see State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 36 (Me.1991). Only the complaint and the policy are considered in determining whether the insurer has a duty to defend. *Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶¶ 6–7, 711 A.2d 1310.

[¶ 10] This comparison test arises from our holding that the duty to defend is broader than the duty to indemnify, *see York Ins. Group of Me. v. Lambert*, 1999 ME 173, ¶ 5, 740 A.2d 984, such that an insurer must provide a defense if there is any *potential* that facts ultimately proved could result in coverage, *Penney*, 1998 ME 44, ¶ 4, 707 A.2d 387. The facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage. *Union Mut. Fire Ins. Co. v. Inhabitants of Topsham*, 441 A.2d 1012, 1015 (Me.1982); *see Lambert*, 1999 ME 173, ¶ 4, 740 A.2d 984. Rather, "where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage," an insurer must provide the policyholder with a defense. *Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 68 (1st Cir.2003) (applying Maine law). An insurer may have a duty to defend even against a complaint that could not survive a motion to dismiss. *See Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991).

[¶ 11] Because the duty to defend is broad, any ambiguity in the policy regarding the insurer's duty to defend is resolved against the insurer, *see Union Mut. Fire Ins. Co.*, 441 A.2d at 1015, and policy exclusions are construed strictly against the insurer, *see Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 11, 942 A.2d 663; *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 7, 905 A.2d 819.

[¶ 12] Mindful of these legal principles, we now consider whether, on Ames's complaint, he could potentially prove facts that would establish liability covered by Mitchell's Allstate policy. We therefore compare the facts alleged in Ames's complaint with the language of the Allstate policy.

B. The Allstate Policy and the Ames Complaint

1. The Policy Exclusion

[¶ 13] Although the duty to defend is broad, it does have limits. An insurer may properly refuse to defend a policyholder if the allegations of the complaint fall entirely within a policy exclusion. *See, e.g., Johnson v. Amica Mut. Ins. Co.,* 1999 ME 106, ¶¶ 6–7, 733 A.2d 977; *Landry v. Leonard,* 1998 ME 241, ¶¶ 5–10, 720 A.2d 907.

[¶ 14] The policy exclusion at issue here will apply to Ames's conversion claim against Mitchell if the complaint limits the potential liability to circumstances where either (a) Mitchell *intentionally* interfered with property that he knew belonged to Ames, or (b) Mitchell *intentionally* acted in a way that could reasonably be expected to result in the interference with Ames's property. We examine Ames's complaint to determine whether facts could possibly be proved on this complaint that would bring the complaint within the policy's coverage.

2. Coverage for the Conversion Claim

[¶ 15] The Ames complaint alleged that Mitchell had, among other things, converted Ames's personal property. To establish a claim for conversion, the plaintiff must show an invasion of the plaintiff's possession or right to possession by demonstrating "(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender." *Bradford v. Dumond,* 675 A.2d 957, 962 (Me.1996) (quotation marks omitted). "The converter need not intend any conscious wrongdoing," but need only act with "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's

rights." *Ocean Nat'l Bank of Kennebunk v. Diment,* 462 A.2d 35, 39 (Me.1983) (quotation marks omitted). "A mistake of law or fact is no defense." *Id.* (quotation marks omitted).

[¶ 16] Here, the complaint contains no allegation that Mitchell acquired possession of any of Ames's property rightfully, so there is no requirement of demand and a refusal to surrender. *See Bradford,* 675 A.2d at 962. We therefore focus on the extent to which Ames alleged facts that could satisfy the first two elements of proof and establish property damage that is not excluded for having been either intended by Mitchell or "reasonably ... expected to result" from Mitchell's intentional or criminal acts.

[¶ 17] Ames's complaint alleged that one or more members of the fishermen's group had converted lobster traps or fishing gear that belonged to Ames. Although Ames alleges a conversion undertaken "in an agreed upon and concerted effort," that fact would not have to be proved for Ames to prevail on his conversion claim. Rather, on these allegations, Ames could establish conversion against Mitchell in one of two other ways.

[¶ 18] First, Ames could demonstrate a conversion by proving that Mitchell exercised dominion or control over lobster fishing gear by simply possessing gear in which Ames had a property interest and right of possession. *See Bradford,* 675 A.2d at 962; *Ocean Nat'l Bank of Kennebunk,* 462 A.2d at 39. Proof of a conversion by the exercise of control over Ames's property through simple possession would not, however, bring the claim within Mitchell's liability coverage. The policy provides liability coverage for property damage, which it defines as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." The sim-

ple exercise of possessory control over Ames's property would not establish physical injury to or destruction of that property.

[¶ 19]   Second, however, Ames could establish a conversion that involved damage to his property.  For instance, Ames could prove on this complaint that other individuals cut Ames's lobster traps, that Mitchell found and took the traps without knowing that they belonged to Ames, and that Mitchell damaged the traps in this process. Mitchell could have intentionally "exercise[d] a dominion or control over the goods" in such a way that he accidentally interfered with Ames's rights, *Ocean Nat'l Bank of Kennebunk,* 462 A.2d at 39 (quotation marks omitted), by taking, damaging, and holding property in which Ames has a property interest and right to possession.

[¶ 20]   Because Ames could potentially establish a conversion resulting in property damage without proving that Mitchell *intended* to damage Ames's property, *see Bradford,* 675 A.2d at 962, Ames's conversion claim could result in covered liability. The policy's intentional acts exclusion would not apply if the evidence showed that Mitchell lacked an intention or expectation that property belonging to Ames would be damaged.  Liability for conversion could be proved on Ames's complaint without any evidence that Mitchell intentionally exercised dominion or control over traps or gear either (a) with the intent to damage Ames's property or (b) in circumstances where damage to Ames's property was "reasonably ... expected to result." *See Ocean Nat'l Bank of Kennebunk,* 462 A.2d at 39.  Construing the policy in favor of coverage as we must, *see Hall,* 2007 ME 104, ¶ 11, 942 A.2d 663; *Harris,* 2006 ME 72, ¶ 7, 905 A.2d 819; *Union Mut. Fire Ins. Co.,* 441 A.2d at 1015, the liability alleged in the complaint had the potential to result in covered liability, and Allstate

had a duty to defend, *see Penney,* 1998 ME 44, ¶ 4, 707 A.2d 387.

[¶ 21]   Because an insurer has a duty to defend if any cause of action alleged in a complaint could fall within the policy's liability coverage, *see Me. Mut. Fire Ins. Co. v. Gervais,* 1998 ME 197, ¶¶ 4, 13, 715 A.2d 938, we need not consider whether other theories of liability set forth in the Ames complaint, such as Ames's claim for intentional infliction of emotional distress, would have independently given rise to a duty to defend.

The entry is:

Judgment vacated.  Remanded for further proceedings to determine contract damages.