

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: CV-12-215


ROBERT M.A. NADEAU,
Individually and obo NADEAU
LAW, LLC
                Plaintiff

        v.                              **DECISION AND ORDER**

PEOPLE'S UNITED BANK,
fka OCEAN NATIONAL
BANK

LAMBERT COFFIN, P.A. fka
LAMBERT COFFIN HAENN

and MICHAEL S. HAENN, ESQ                   STATE OF MAINE
                                        Cumberland ss Clerk's Office

                Defendants                    JUN 12 2013

                                            RECEIVED

## DECISION AND ORDER ON MOTION TO DISMISS

Defendants Lambert Coffin, P.A., fka Lambert Coffin Haenn (Lambert Coffin)

and Michael D. Haenn (Haenn), each bring a Motion to Dismiss under M.R.Civ.P

12(b)(6)[1], seeking dismissal of Counts I - VII of the Complaint against them. Robert

M.A. Nadeau, individually and o/b/o Nadeau Law, LLC,[2] (Nadeau) opposed the

dismissal of all counts. Nadeau's complaint is based on his allegations concerning the

wrongful freezing of two client trust accounts by Haenn and his client, the Bank,

notwithstanding two court orders requiring them to release the accounts, and Haenn's

---

[1] Lambert Coffin alternatively files a motion for a judgment on the pleadings pursuant to Rule 12(c) in the event the court concludes that the filing of a Rule 12(b)(6) motion is untimely. Because Lambert Coffin raised the defense of failure to state a claim in its answer, it is therefore entitled to raise this issue by motion under either Rule 12(b)(6) or 12(c). Lambert Coffin endorses, joins in and incorporates by reference arguments raised by Haenn. Lambert Coffin, Mot. Dismiss, p. 2.

[2] Nadeau Law, LLC no longer exists as it has been dissolved. As such, it is not a party to this lawsuit.

1

"pattern of behavior over many months to disparage, taunt, demean and upset attorney Nadeau." (Pl.'s Compl., Nature of Action.) Nadeau alleges that defendants' conduct caused Nadeau's client to file a grievance complaint against him because he was unable to access and release the funds to which his client was entitled.

## BACKGROUND

Attorney Haenn filed a lawsuit, *Ocean Bank v. Nadeau & Assoc.s, Inc. and Nadeau Law*, LLC, 07-CV-156 (Me. Dist. Ct., York) on October 7, 2007 against Nadeau Law and Nadeau & Associates to collect on a commercial loan owed by Nadeau's former law firm, Nadeau & Associates, wrongfully claiming that a real estate trust account and a client trust account of Nadeau & Associates were subject to a security agreement Nadeau & Associates had executed to secure a loan in favor of Bank. (Pl.'s Compl. ¶¶ 10-11.) Nadeau & Associates had established with the Bank one account to escrow funds related to real estate transactions and another account for client deposit funds subject to Maine's IOLTA. (Pl.'s Compl. ¶ 12.) The action of freezing the accounts prevented Nadeau from transferring those funds to Nadeau Law's trust accounts. Nadeau was obligated to transfer the trust funds for clients who were then represented by Nadeau Law, and not Nadeau & Associates. (Pl.'s Compl. ¶ 13.) Nadeau filed a counterclaim to the Bank's collection action, raising the wrongful seizure of the client trust account and real estate trust account.

On February 7, 2008, Nadeau placed Nadeau & Associates in Chapter 7 bankruptcy[3]. (Pl.'s Compl. ¶ 13.) The Defendants immediately caused to be frozen and

---

[3] Nadeau also filed for personal Chapter 7 bankruptcy and received a discharge on February 26, 2008, which was later revoked in an Adversary Proceeding brough by the U.S. Trustee against Nadeau for reckless disregard of his bankruptcy disclosure obligations. Ultimately, the Adversary Proceeding was dismissed on May 25, 2010 pursuant to a stipulation between the U.S. Trustee and Nadeau. As a result,

2

seized the two client trust accounts for the benefit of the Bank. (Pl.'s Compl. ¶ 13.) Defendants' actions prevented Nadeau from transferring client trust accounts funds to Nadeau Law's trust accounts as Nadeau was required to do for the benefit of his affected clients who were then represented by Nadeau Law, instead of Nadeau & Associates. (Pl.'s Compl. ¶ 13.) The Defendants failed to release the accounts for more than 20 months after Nadeau obtained a judgment against the Bank in York District Court on July 8, 2009, ordering the immediate release of the funds. (Pl.'s Compl. ¶¶ 14, 21.)[4] Subsequently one of Nadeau's clients pursued a professional grievance against Nadeau due to his inability to access and release the funds to which the affected client was entitled. (Pl.'s Compl. ¶ 18.) After more than three years the professional grievance against Nadeau was dismissed following a contested hearing. (Pl.'s Compl. ¶ 19.)

On August 11, 2009 Nadeau obtained a revised judgment from the York District Court, which required the immediate release of the client accounts to Nadeau and his former law firms. (Pl.'s Compl. ¶ 21, 22.)[5] Despite the issuance of the revised judgment against the Defendant, the Bank continued to fail to comply with the judgment as ordered: The Bank would not release the funds held until it received direction and authorization from its attorney, Michael Haenn. Additionally, the Bank, by and through Haenn, attempted on a post-judgment basis to secure Nadeau's release of any and all future claims Nadeau was eligible or could be eligible to pursue against them unless

---

Nadeau remained as a guarantor who was personally liable to the Bank on the promissory note to his law firm.

[4] On or about July 9, 2009, the York District Court entered an order on defendant's motion for entry of default and default judgment. *People's United Bank v. Nadeau & Associates*, 07-CV-156, (Me. Dist. Ct., York, July 9, 2009) (Cantara, J.).

[5] On or about August 11, 2009, the York District Court entered a revised order on Defendant's Motion for Corrected Default Judgment. *People's United Bank v. Nadeau & Associates*, 07-CV-156, (Me. Dist. Ct., York, August 11, 2009) (Cantara, J.).

Nadeau signed a general release in favor of both Defendants regarding any claims. (Pl.'s Compl. ¶ 24.)

Eventually, Nadeau initiated a professional grievance complaint against Haenn. (Pl.'s Compl. ¶ 25.) On December 29, 2011, Haenn received a public reprimand from the Maine Board of Overseers of the Bar, GCF #09-380, for his conduct related to this matter. (Pl.'s Compl. ¶ 25.)[6]

Nadeau brought his complaint on May 3, 2012 seeking to hold Attorney Haenn and his principals liable. On October 11, 2012 this Court granted Nadeau's Assented to Motion to Dismiss Claims Against Defendant People's United, with prejudice and without costs to any party pursuant to a Settlement Agreement.

## DISCUSSION

### I. Standing

Defendants argue that the Complaint should be dismissed because Nadeau does not have standing to bring any of the claims against Haenn or Lambert Coffin. Defendants contend that Nadeau's former law firm, Nadeau & Associates, and not Nadeau, held the Accounts in question. Defendants argue that when Nadeau & Associates went through bankruptcy in 2008, Nadeau & Associates did not list these claims against Haenn as assets on its schedule B (despite listing the Accounts themselves). Defendants argue that Nadeau & Associates' failure to list these claims as its assets in it bankruptcy filings means that the claims were never administered or abandoned by the bankruptcy trustee. Therefore, according to defendants, neither Nadeau & Associates, nor much less

---

[6] The Board concluded that "Haenn violated duties he owed to the legal system by not timely complying with the District Court's August 11, 2009 Judgment and abused the legal process causing injury to Nadeau and his clients." *Board of Overseers of the Bar v. Michael S. Haenn, Esq.*, GCF 09-380, Stipulated Report of Findings and Order of Panel D of the Grievance Commission at 7 (Dec. 29, 2011.

4

Nadeau, have standing to bring these claims against Haenn because they remain property of the bankruptcy estate.

Nadeau counters that the real estate escrow fund and the client trust fund held nominally by Nadeau & Associates were never property of the bankrupt estate of Nadeau & Associates. Rather the funds in the accounts were the property of clients of Nadeau & Associates, and Nadeau &Associates was merely holding these funds and these accounts in trust for the benefit of its clients. In support of his position Plaintiff cites *Begier v. I.R.S.*, 496 U.S. 53, 59, 110 S.Ct. 2258, 2263 (1990), in which the Supreme Court stated, "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"

Nadeau points out that the "Trustee in Associates' bankruptcy case…agreed that these accounts were not property of the estate and should not be listed as such and filed a 'Trustee's Abandonment of client trust accounts and real estate accounts (client funds) in Ocean National Bank on July 24, 2008.'" (Pl.'s Opposition at 3.)

This Court finds that Nadeau has standing to bring forth the claims against the Defendants, because attorney Nadeau, not any legal entity, was personally and professionally obligated to transfer to affected clients their unearned property and credits to be held by the successor custodian of such property and credits pursuant to the provisions of the Maine Bar Rules. *See* former M. Bar R. 3.6(e) and M.R. Prof. Conduct 1.15.[7] See *People's United Bank v. Nadeau & Assoc.s,* 07-CV-156 (Me. Dist. Ct. 2, n.1, York, August 11, 2009) (Cantara, J.) However, securing standing does not defeat the motion to dismiss.

---

[7] Maine Bar Rule 3.6(e) was replaced by Maine Rule of Professional Conduct 1.15, effective August 1, 2009.

## II. Motion to Dismiss:  Standard of Review

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). The court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* When testing the complaint under M.R. Civ. P. 12(b)(6), the material allegations of the complaint must be taken as admitted. *Id.* "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington,* 2001 ME 169, ¶ 5, 785 A.2d 1244.

## III.  Plaintiff's Claims

A. Count I: Conversion

To establish conversion one must, in addition to establishing invasion of a possessory interest, show (1) a property interest; (2) the right to possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender. *Chiappetta v. LeBlond,* 505 A.2d 783, 785 (Me. 1986). However, since Nadeau does not allege that the defendants had rightful possession of the accounts, he is not required to show that he made a demand for return of the property. *Lougee Conservancy v. Citimortgage,* 2012 ME 103, ¶ 21 n. 2, 48 A. 3d 774, 783 n. 2. Thus, Nadeau must establish a property interest in and a right to possession of the accounts at the time of the alleged conversion. *Id.* at ¶ 21.

Defendant Haenn contends that he cannot be liable for conversion of the Accounts because he did not "exercise dominion and control" over them. *See Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶15, 36 A.3d 876, 880 (explaining elements of the tort of conversion). Haenn claims that the Bank, not Haenn or Lambert Coffin, had control and authority over the Accounts and ultimately did make the final decision to freeze the Accounts.

Lambert Coffin alleges that Nadeau cannot make out a claim for conversion because he never had a possessory interest in the client trust accounts. This is the correct analysis because Nadeau admits that Nadeau & Associates "did not possess any property interest in the Accounts." (Pl.'s Brief in Opp. at 3). Nadeau has therefore failed to allege the threshold element for the tort of conversion: that he had a property interest in the property he claims was converted. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A. 2d 798, 800. Even though Nadeau may have had an ethical obligation to take appropriate measures to ensure that his clients' funds were returned to them, this obligation is not the same as a property interest, a necessary element to establish a claim for conversion.

Nadeau mistakenly argues that he had a possessory interest on behalf of his clients at the time Haenn froze the accounts and held the accounts for more than twenty months, making them unavailable for transfer by Nadeau to his clients at his then law firm Nadeau Law, notwithstanding the District Court Order to the contrary. It was Nadeau's clients, not Nadeau, who had the possessory interest. Count I is DISMISSED.

B. Count II: Abuse of Process

To prove abuse of process, one must show that (1) "the use of process in a manner improper in the regular conduct of the proceeding," and (2) "the existence of an ulterior

7

motive." *Advanced Construction Corporation v. Pilecki*, 2006 ME 84, ¶ 23, 901 A. 2d 189, 197 (citation omitted). "The filing of a lawsuit qualifies as a regular use of process and cannot constitute abuse of process, even if the filing was influenced by an ulterior motive.[8] Instead, abuse of process claims arise when litigants misuse individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed." *Id.* (citations omitted).

Defendants contend that the complaint nowhere suggests that the Bank did not have a perfectly valid cause of action, or that the lawsuit was filed for any purpose other than to collect on its loan. Nadeau counters that the refusal to comply with court orders and release the funds was abuse of process and an improper motive must be inferred by the very reprehensibility of the conduct.

The filing of a lawsuit against Nadeau's former law firm, Nadeau Law, LLC, to collect on a commercial loan owed to Ocean National Bank by Nadeau's former law firm Nadeau & Associates does not constitute an abuse of process. Nadeau alleges that when viewed in the light most favorable to Plaintiff, that Defendants freezing of and refusing to release Nadeau's clients trust accounts in violation of a court order, causing harm to Nadeau and his clients amounts to abuse of legal process. These actions may be contempt of a court order, but regardless of any improper motive Haenn may have had, his actions are not the use of process in a manner improper in the regular conduct of the proceeding. Count II is DISMISSED.

C. Count III: Wrongful Use of Civil Proceedings

The tort of wrongful use of civil proceedings exists where: (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary

---

[8] The court does not decide whether the Defendants were influenced by any ulterior motive.

8

purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought. *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651, 656. (citing RESTATEMENT (SECOND) OF TORTS § 674 (1977)).

Nadeau alleges that Haenn's refusal to obey the court orders and his refusal to release the frozen trust accounts constitutes the continuation of the civil proceedings without probable cause and with a primary purpose other than that of securing the proper adjudication of the claim.

The termination of the Bank's proceeding in the York District Court occurred when the Bank was defaulted and when the District Court determined that the Bank had no interest in the Nadeau trust accounts and ordered that the funds be turned over immediately to Nadeau. Even though the Bank had no right to the trust accounts, the Bank initiated the civil lawsuit to collect on the commercial loan it made to Nadeau's law firm. This does not establish wrongful use of civil proceedings as the Bank had the right to pursue a collection action against Nadeau & Associates. Count III is DISMISSED.

D. Count IV: Negligence

As Plaintiff concedes that Maine law does not recognize that an attorney owes any specific duty or duties to the opposing party or that party's attorney. Therefore, Count IV is DISMISSED.

E. Count V: Intentional Interference with Advantageous Relations

"[I]f a person by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference, that person can be liable in

9

damages for such tortious interference." *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989). Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages. *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶31, 915 A.2d 400, 408 (citations omitted). The "advantageous relations" with which the Defendants allegedly interfered were "valid contracts and relationships [Nadeau had] with clients of his law firm." (Pl.'s Compl. ¶ 51.)

Nadeau asserts that the "unlawful seizing and retaining" of the trust account funds, and Haenn's "false claims to the Court that [the Bank] had the legal right to freeze those accounts" is equivalent to fraud. The freezing of the accounts is not a misrepresentation; it is an act. The arguments a lawyer makes to a court, no matter how mistaken, are not fraud. The assertion by itself is insufficient as a matter of law to support a finding of interference by fraud. *Rutland v. Mullen*, 2002 ME 98, ¶15, 798 A. 2d 1104, 1111. However, once the Bank was ordered by the court to release the funds, Plaintiff alleges that the Bank continued to fraudulently and coercively hold the accounts. Plaintiff asserts that the retention of the trust fund accounts "caused substantial financial harm to Plaintiff, individually, and to Nadeau Law, as well as to the Plaintiff's clients" (Pl.'s Compl. ¶ 17.) Viewing the facts in the light most favorable to the Plaintiff, Nadeau alleges facts sufficient to make out a claim of intentional interference with advantageous relations. Defendant's Motion to Dismiss Count V is DENIED.

10

F. Count VI: Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must show that (1) "the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from the defendant's conduct"; (2) "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) "the actions of the defendant caused the plaintiff's emotional distress"; and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Lyman v. Huber*, 2010 ME 139, ¶¶16, 21-23, 10 A. 3d 707 (alterations omitted).

Nadeau asserts that by freezing and retaining the client trust accounts, refusing to release the funds upon repeated demand, and openly mocking Plaintiff, Defendants displayed conduct was so extreme and outrageous as to exceed all possible bounds of decency. It is unlikely that the Defendants, as attorneys and a bank, were unfamiliar with the structure of client trust accounts prior to the freezing of the account. Yet, even were the Defendants unaware at the time the accounts were frozen that the client trust accounts did not hold Plaintiff's property, Plaintiff asserts that once the court found that the accounts were the property of Plaintiff's clients and ordered the release of the accounts, Defendants continued to hold the accounts. (Pl.'s Compl. ¶ 14.) Plaintiff contends that the retention of the accounts with knowledge of the damage it would cause Plaintiff's career and reputation was extreme and outrageous behavior that caused Plaintiff severe emotional distress. (Pl.'s Compl. ¶¶ 19, 56.) Viewing the facts in the light most favorable

11

to the Plaintiff, Nadeau alleges facts sufficient to make out a claim of intentional infliction of emotional distress. Defendant's Motion to Dismiss Count VI is DENIED.

G. Count VII: Consumer Protection/ Unfair Trade Violations

Defendants claim that Plaintiff fails to identify a cognizable cause of action. Defendants point to the title, which uses the phrase "unfair trade violations." If Plaintiff intended to invoke Maine's Unfair Trade Practices Act, 5 M.R.S.A. §205-A *et seq.*, he lacks standing under the Act. The Act in part states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S.A. §207. Any person "who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes. . . .", *Id.* at §213, may bring a private action for violations of this statute; neither Nadeau & Associates nor Nadeau are persons or consumers within the meaning of the statute. Count VII is DISMISSED.

**The entry is:**

The motions to dismiss counts I, II, III, IV and VII of the complaint are GRANTED.

The motions to dismiss counts V and VI of the complaint are DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: June 12, 2013

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Michael Waxman Esq
Defendant Lambert Coffin-John Whitman Esq
Defendant Haenn-Peter DeTroy Esq