STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2021-465

SECURITY NATIONAL
INSURANCE COMPANY,

      Plaintiff,

      v.

SHAUN LE and CHRISTOPHER
COURT,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

REC'D CUMB CLERKS OFC
OCT 20 '22 AM 11:41

This matter is before the Court on Plaintiff Security National Insurance Company's ("Security") Motion for Summary Judgment and Defendant Christopher Court's Cross Motion for Summary Judgment. Defendant Shaun Le, who was defaulted on September 26, 2022, has not opposed either motion. For the following reasons, the Court grants Security's Motion for Summary Judgment. Summary judgment is entered in favor of Security on its Complaint for Declaratory Judgment. Mr. Court's Cross Motion for Summary Judgment is denied.

## I.    Background

This declaratory judgment action arises out of a separate case filed in this court, captioned *Court v. Five Star Roofing Experts, Inc.*, CV-2021-338 ("the Underlying Action").[1] The Underlying Complaint contains the following allegations. Mr. Le operates a roofing business in Maine individually and as Five Star Roofing Experts, Inc. ("Five Star"). (Pl.'s Supp'g S.M.F. ¶ 1; Underlying Compl. ¶ 5.) Five Star and/or Mr. Le was a subcontractor hired by On Center Construction to install roofing at a new residential development

---

[1] The Court will refer to Christopher Court's First Amended Complaint in the Underlying Action as "the Underlying Complaint."

Entered on the Docket: 10/20/2022

under construction at Dogwood Lane, Yarmouth, Maine. (Pl.'s Supp'g S.M.F. ¶ 2; Underlying Compl. ¶ 7.) Mr. Court was an independent contractor hired by Five Star and/or Mr. Le to work on the roofing project at the new residential construction development at Dogwood Lane. (Pl.'s Supp'g S.M.F. ¶ 3; Underlying Compl. ¶ 9.)

On or about February 4, 2019, Mr. Court was present at the new construction development at Dogwood Lane for work. (Pl.'s Supp'g S.M.F. ¶ 4; Underlying Compl. ¶ 10.) When Mr. Court returned to the job site after lunch, Mr. Court's supervisor, Jessie Lavalle, and Nate Adams, a laborer, had erected new staging approximately fourteen to sixteen feet off the ground in an L-shape on the back of a garage. (Pl.'s Supp'g S.M.F. ¶ 5; Underlying Compl. ¶¶ 11, 14.) Mr. Lavalle was already on the staging. (Pl.'s Supp'g S.M.F. ¶ 5; Underlying Compl. ¶ 14.) Mr. Court climbed up onto the staging and stepped on one of the planks, which flipped toward Mr. Court and caused him to fall. (Pl.'s Supp'g S.M.F. ¶ 6; Underlying Compl. ¶¶ 15-16.) As a result of the fall, Mr. Court sustained injuries. (Pl.'s Supp'g S.M.F. ¶ 7; Underlying Compl. ¶ 17.) Mr. Court filed suit against Five Star, and later added Mr. Le as a defendant to the Underlying Action.

At the time of the accident, Mr. Le had a Commercial General Liability Policy ("the Policy") issued by Security. (Pl.'s Supp'g S.M.F. ¶ 8; Def. Court's Add'l S.M.F. ¶ 17.) Mr. Le was the only named insured on the Policy. (Pl.'s Supp'g S.M.F. ¶ 9.)

The Commercial General Liability Coverage Form of the Policy includes the following provision within a section entitled "Coverage A – Bodily Injury and Property Damage Liability":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We

may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . .

(Pl.'s Supp'g S.M.F. ¶ 10; Pl.'s Ex. A at SNIC000030.)

There is one relevant exclusion set forth in an endorsement that modifies Coverage A of the Commercial General Liability Coverage Part ("the Designated Ongoing Operations Exclusion").[2] (Pl.'s Supp'g S.M.F. ¶ 13.) The Designated Ongoing Operations Exclusion provides:

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

(Pl.'s Supp'g S.M.F. ¶ 13; Pl.'s Ex. A at SNIC000067.) The schedule defines "designated ongoing operations" as follows:

> New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner, regardless of whether the dwelling is a custom home or the dwelling is built as part of a tract or a multi-dwelling development . . . .

(Pl.'s Supp'g S.M.F. ¶ 14; Pl.'s Ex. A at SNIC000067.)

The Policy also includes medical payments coverage for certain bodily injuries caused by an accident. (Pl.'s Supp'g S.M.F. ¶ 15; Pl.'s Ex. A at SNIC000037.) The Policy excludes medical payments coverage "for expenses for 'bodily injury' . . . excluded under Coverage A." (Pl.'s Supp'g S.M.F. ¶ 16; Pl.'s Ex. A at SNIC000037.)

On July 17, 2019, Security[3] sent Mr. Le a letter stating:

> AmTrust North America is the claims administrator for [Security], your liability insurer and we received a claim against you in connection with the

---

[2] Security also cites to and briefly discusses an exclusion that applies to bodily injury included in the "products-completed operations hazard," but fails to cite to a portion of the record defining "products-completed operations hazard" or explain why the allegations within the Underlying Complaint fall within this exclusion. The Court, therefore, omits further discussion of this exclusion.

[3] As both Mr. Court and Security note, the letters discussed were sent by AmTrust North America, the claim administrator for Security. The Court will refer to AmTrust North America acting on behalf of Security as "Security."

above-captioned matter. Please be advised that we reviewed this matter and determined that coverage may not be available for this matter for the reasons set forth below. Accordingly, Security hereby reserves the right to disclaim coverage of this matter to you.

(Def. Court's Add'l S.M.F. ¶ 18; Def. Court's Ex. B; Pl.'s Add'l S.M.F. ¶¶ 30, 31.) This letter continued to describe the claim and explain Security's bases for its determination that there may not be coverage for the claim. (Pl.'s Add'l S.M.F. ¶ 32; Def. Court's Ex. B.) After describing the possible applicable exclusions under the Policy, the letter states: "For the foregoing reasons, Security is reserving its right to disclaim coverage of this matter to you." (Pl.'s Add'l S.M.F. ¶ 33; Def. Court's Ex. B.) The letter also states that it "does not constitute a waiver of any policy provisions or defenses available to Security." (Pl.'s Add'l S.M.F. ¶ 34; Def. Court's Ex. B.)

On October 8, 2019, Security sent Mr. Le a letter stating, among other things, that it was "reiterating its reservation of its right to disclaim coverage of this matter to you." (Def. Court's Add'l S.M.F. ¶ 19; Def. Court's Ex. C; Pl.'s Add'l S.M.F. ¶¶ 35, 38.) The letter also described the claim and each potential reason for denial of coverage. (Pl.'s Add'l S.M.F. ¶ 37; Def. Court's Ex. C.)

On October 15, 2020, Security sent Mr. Le another letter in which it restated its reservation of its right to disclaim coverage. (Def. Court's Add'l S.M.F. ¶ 20; Def. Court's Ex. D; Pl.'s Add'l S.M.F. ¶ 39.) It read, in part:

> As you are aware, by letters dated July 17, 2019 and October 8, 2019 (copies enclosed), Security previously reserved the right to disclaim coverage of this matter to you. Please be advised that our ongoing investigation has revealed additional reasons why coverage may not be available for this matter under your policy. Accordingly, for the reasons set forth in our prior coverage letters of July 17, 2019 and October 8, 2019, which are incorporated by reference herein, and for the additional reasons set forth below, Security hereby reiterates its reservation of its right to disclaim coverage of this matter to you.

(Pl.'s Add'l S.M.F. ¶ 40; Def. Court's Ex. D.)

The October 15, 2020 letter continued:

> Our investigation reveals that the project involved new construction of a single-family dwelling for which the certificate of occupancy was issued on July 12, 2019. Since this matter involves injuries arising out of the work or operations described in the Schedule of policy forms CG 21 34NR 01 87 and CG 21 53NR 01 96, i.e. new construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner, no coverage is available under the Security policy for this additional reason as set forth in the above-cited provisions.

(Pl.'s Add'l S.M.F. ¶ 43; Def. Court's Ex. D.)

On March 16 and October 6, 2021, Security sent Mr. Le two more letters. (Def. Court's Add'l S.M.F. ¶¶ 21, 22; Def. Court's Ex. E; Def. Court's Ex. F.) The March 16 and October 6 letters describe the claim and each policy exclusion upon which Security may rely to disclaim coverage. (Pl.'s Add'l S.M.F. ¶¶ 47, 48, 51, 52; Def. Court's Ex. E; Def. Court's Ex. F.) Each letter concludes with a statement reiterating Security's reservation of rights. (Pl.'s Add'l S.M.F. ¶¶ 49, 54; Def. Court's Ex. E; Def. Court's Ex. F.)

On October 27, 2021, Mr. Court amended his complaint to add Mr. Le as a defendant in the Underlying Action. (Pl.'s Add'l S.M.F. ¶ 55.) On December 7, 2021, an attorney retained by Security filed an answer to the Underlying Complaint on behalf of Mr. Le. (Def. Court's Add'l S.M.F. ¶ 24; Pl.'s Add'l S.M.F. ¶ 56.) On December 10, 2021, Security sent Mr. Le a letter stating that "Security hereby disclaims coverage of [the claims in the Underlying Action] to Shaun Le." (Def. Court's Add'l S.M.F. ¶ 25; Def. Court's Ex. H; Pl.'s Add'l S.M.F. ¶¶ 57, 58.) The letter continued:

> Subject to the position set forth herein, we will provide a defense in this lawsuit to Shaun Le, through assigned counsel, subject to resolution of a declaratory-judgment action that we will commence against Shaun Le to confirm the propriety of our disclaimer. If the court confirms we have no duty to defend or indemnify Shaun Le, then counsel will be asked to withdraw and Shaun Le will be obligated to obtain its own defense counsel at its own cost. Shaun Le is free to accept or reject this offer of a defense subject to resolution of a declaratory-judgment action and, if Shaun Le rejects it, to proceed with its defense at its own expense.

(Def. Court's Add'l S.M.F. ¶ 26; Def. Court's Ex. H; Pl.'s Add'l S.M.F. ¶ 59.) The letter concluded:

> Without waiving this disclaimer we have assigned the [sic] Douglas, Denham Buccina Kennedy-Jensen & Bell, LLC . . . to represent Shaun Le in this matter until such time as the court in the above-mentioned declaratory-judgment action has confirmed that we have no duty to defend or indemnify Shaun Le.

(Def. Court's Add'l S.M.F. ¶ 27; Def. Court's Ex. H; Pl.'s Add'l S.M.F. ¶ 62.)

Security and Mr. Court have cross-moved for summary judgment on the issue of Security's duties to defend and indemnify Mr. Le in the Underlying Action. Security asserts that the allegations in the Underlying Action fall entirely within one or more exclusions in the Policy. Mr. Court, in his memorandum of law opposing Security's motion and supporting his own motion, argues that Security has waived or is otherwise estopped from asserting its right to disclaim coverage of the claims against Mr. Le in the Underlying Action.

## II. Legal Standard

When parties present cross motions for summary judgment, the court applies the rules for consideration of summary judgment separately to each motion. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

The Court will first evaluate Security's Motion for Summary Judgment, viewing the record in the light most favorable to Mr. Court. Then, the Court will evaluate Mr. Court's Cross Motion for Summary Judgment in the light most favorable to Security.

### A. Security's Motion for Summary Judgment

Security moves for summary judgment on the grounds that the facts alleged in the Underlying Complaint fall within one or more exclusions in the Policy. Mr. Court does not oppose Security's interpretation of the Policy and Underlying Complaint. Rather, Mr. Court argues only that Security has waived defenses to coverage and the duty to defend and is estopped from denying coverage.

#### 1. Duty to Defend and Indemnify

The duty to defend is broader than the duty to indemnify. *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 12, 236 A.3d 458. Whether an insurer has a duty to defend is a question of law. *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793. The duty to defend "is determined by comparing the allegations in the underlying complaint with

the provisions of the insurance policy." *Com. Union Ins. Co. v. Alves*, 677 A.2d 70, 72 (Me. 1996). The Law Court has held that "[r]egardless of extrinsic evidence, if the complaint—read in conjunction with the policy—reveals a mere *potential* that the facts may come within the coverage, then the duty to defend exists." *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 9, 59 A.3d 1280. However, a duty to defend does not exist "if the allegations of the complaint fall entirely within a policy exclusion." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 13, 36 A.3d 876.

Security argues that the allegations of the Underlying Complaint fall within the scope of the Designated Ongoing Operations Exclusion, which excludes coverage of "'bodily injury' or 'property damage' arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others." The schedule of the endorsement describes Mr. Le's ongoing operations as: "New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner . . . ."

The Underlying Complaint alleges that Mr. Court sustained bodily injuries when he fell from staging erected as part of a roofing project conducted by or on behalf of Mr. Le and/or Five Star (who is not a named insured) at a new residential construction development. The allegations fall entirely within the Designated Ongoing Operations Exclusion to Coverage A.[4]

Thus, Security has no duty to defend Mr. Le. *Mitchell*, 2011 ME 133, ¶ 13, 36 A.3d 876. It necessarily follows that Security has no duty to indemnify. *See N. Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me. 1996) ("The group of actions for which there is a duty to

---

[4] Consequently, the exclusion to medical payments coverage "for expenses for 'bodily injury' . . . excluded under Coverage A" also applies.

indemnify is merely a subset of the larger sphere of actions for which there is a duty to defend."); *Northland Ins. Cos. v. Coconut Island Corp.*, 961 F. Supp. 20, 22 (D. Me. 1997); 1 Jack Simmons et al., Maine Tort Law § 18.02 n.2 (2020 ed.).

## 2. Waiver and Estoppel

Although Mr. Court has not opposed Security's arguments regarding the interpretation and application of the Policy, he argues that Security has waived or is estopped from denying coverage.

Initially, the Court must address the issue raised by Security of Mr. Court's standing to assert waiver or estoppel. Obviously, Mr. Court is not a party to the contract between Mr. Le and Security. Nor has Mr. Court argued or set forth facts suggesting that he is an intended third-party beneficiary of the Policy. Certainly, Mr. Court would not have standing to seek a declaratory judgment on these issues until the tortfeasor's liability had been established. *See Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me. 1984). However, the standing analysis applies to claims, not affirmative defenses or arguments in opposition to claims.[5] *See id.* Accordingly, the Court will proceed to the substance of Mr. Court's arguments.

"An insurer may be estopped from denying coverage when the party claiming coverage has demonstrated (1) unreasonable conduct of the insurer that misleads the insured concerning the scope of his coverage and (2) justifiable and detrimental reliance by the insured upon the insurer's conduct." *Me. Mut. Fire Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996). "The conduct relied upon must have induced the insured 'to do what

---

[5] Moreover, the Law Court has previously analyzed an injured party's estoppel arguments in opposition to an insurer's declaratory judgment action without finding a standing issue. *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 272 (Me. 1986). *Smith* and *Elwell* involved the same parties and overlapping issues. Although the injured party did not have standing in *Smith* to seek a declaratory judgment that Allstate Insurance Company was estopped from denying coverage, she was able to assert the same argument in opposition to Allstate's motion for summary judgment on its declaratory judgment complaint in *Elwell*. *See Smith*, 483 A.2d at 346; *Elwell*, 513 A.2d at 270, 272.

resulted to his detriment and what he would not otherwise have done.'" *Elwell*, 513 A.2d at 272 (quoting *Roberts v. Me. Bonding & Cas. Co.*, 404 A.2d 238, 241 (Me. 1979)); *see also Hunnewell v. Liberty Mut. Fire Ins. Co.*, 588 A.2d 300, 302 (Me. 1991).

Mr. Court argues that the letters sent on behalf of Security before an answer was filed on Mr. Le's behalf in the Underlying Action were ambiguous or misleading regarding Security's duty to defend and intent to disclaim coverage. Mr. Court points to the fact that Security did not, in its early letters to Mr. Le, explain that Security would file a separate lawsuit against Mr. Le on the issue of its duty to defend.[6]

This argument is unavailing because the first five of the six letters were sent before Mr. Le was named as a defendant in the Underlying Action, and several were sent before the Underlying Action was filed. Because there was not yet any suit against Mr. Le, Security's failure to explain that it would defend against any eventual suit subject to a reservation of rights could not have been misleading. Moreover, none of the letters were ambiguous as to Security's position regarding coverage or its intent to reserve its right to disclaim coverage.

Additionally, Mr. Court argues that Security's conduct was misleading because counsel retained by Security filed an answer on Mr. Le's behalf three days before it sent the December 10, 2021 letter explaining its intent to defend subject to a reservation of rights. The Law Court has held that defending entirely without reservation may result in estoppel.[7] *See Jenkins v. Hardware Mut. Cas. Co.*, 152 Me. 288, 292-93, 128 A.2d 852, 855

---

[6] Neither Maine law nor any section of the Policy cited in the record require insurers to specifically inform the insured that the insurer may later file a declaratory judgment action on the duty to defend and indemnify before assuming control of the insured's defense.

[7] There is significant overlap in waiver and estoppel analyses within and among courts in the context of insurance claims. For example, some courts find waiver when an insurer defends without timely reserving its rights.

(1957); *Lunt v. Fidelity & Cas. Co.*, 139 Me. 218, 220-21, 28 A.2d 736, 738; *Colby v. Preferred Accident Ins. Co. of N.Y.*, 134 Me. 18, 25, 181 A. 13, 16 (1935).

Security consistently and repeatedly notified Mr. Le of its reservation of the right to disclaim coverage and, as new facts informed Security's review of the claim, updated Mr. Le on the bases on which Security expected it might rely to disclaim coverage. Surely, considering the five prior letters reserving the right to disclaim coverage, it cannot be said that Security defended "without reservation."[8]

Even if Security's conduct was misleading, there are no facts in the record demonstrating that Mr. Le justifiably relied on a misleading statement in the letters to his detriment. There is no evidence in the record that Mr. Le would have undertaken a different course of action were it not for Security's conduct or statements.[9]

As to Mr. Le's waiver argument, "waiver is a voluntary relinquishment of some known right, benefit or advantage that the party would have enjoyed were it not for the waiver." *Ne. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 461 A.2d 1056, 1059 (Me. 1983). Waiver "rests upon intention." *Roberts v. Me. Bonding & Cas. Co.*, 404 A.2d 238, 241 (Me. 1979). Mr. Court argues that Security waived its right to deny coverage or its duty to defend in the Underlying Action. As support for his argument, Mr. Court again points to the fact that counsel retained by Security filed an answer on Mr. Le's behalf three days before

---

[8] Mr. Court cites a handful of Georgia Supreme Court and Court of Appeals cases to support his contention that Security's first five letters were ineffective because they expressed only a "future intention" to disclaim coverage, rather than a present, specific disclaimer notwithstanding the insurer's defense of the action. *See, e.g., World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6 (Ga. 2010); *ACCC Ins. Co. of Ga. V. Walker*, 832 S.E.2d 878, 880 (Ga. Ct. App. 2019). Maine case law does not support this proposition.

[9] Some courts presume prejudice to the insured where the insurer seeks to disclaim coverage only after it has controlled the insured's defense up to a late stage of litigation. *See Kearns Coal Corp. v. U.S. Fid. & Guar. Co.*, 118 F.2d 33, 36 (2d Cir. 1941). Even if Maine courts adopted this principle, it would not apply here because Security repeatedly reserved the right to disclaim coverage and notified Mr. Le of its intent to file a declaratory judgment action against him only three days after an answer was filed.

Security sent Mr. Le a letter explaining that Security intended to file a separate declaratory judgment action on its duty to defend.

Once again, this argument overlooks the five previous letters in which Security clearly and specifically explained its bases for believing that Mr. Court's claim was not covered under the Policy and repeatedly reserved its right to disclaim coverage. *See Hawkesworth v. Nationwide Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 66016, at *13-14, *15-16 (D. Me. June 11, 2011) (rejecting insureds' waiver argument even though counsel retained by insurer attended depositions before insurer sent a letter invoking a pertinent exclusion because insurer had previously sent two other letters and was entitled to amend its bases for noncoverage as the facts developed). Security made its position regarding coverage known to Mr. Le long before retaining counsel.

Mr. Court attaches unreasonable significance to the three-day delay in the absence of any other evidence of an intent to waive the right to disclaim coverage. This record lacks evidence from which one could *reasonably* infer that Security intended to relinquish its right to deny coverage. Thus, there is no genuine dispute of material fact on this issue. *See Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 ("Summary judgment is appropriate even when 'concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007))).

Security has demonstrated that the allegations in the Underlying Complaint fall within an exclusion to the Policy's coverage, and Mr. Court's estoppel and waiver arguments are unsuccessful. Security is entitled to entry of summary judgment in its favor.

**B. Mr. Court's Cross Motion for Summary Judgment**

In his Cross Motion for Summary Judgment, Mr. Court contends that summary judgment should be entered against Security because Security has waived or is otherwise estopped from denying coverage of the claims in the Underlying Action. As discussed above, Mr. Court has failed to present sufficient facts to establish waiver or estoppel or a genuine dispute of material fact as to one of these theories, even when the record is viewed in the light most favorable to him. Accordingly, the Court must deny Mr. Court's motion.

## IV.    Conclusion

For the foregoing reasons, the Court enters summary judgment in favor of Security on its Complaint for Declaratory Judgment.

The entry is:

1. Plaintiff Security National Insurance Company's Motion for Summary Judgment is GRANTED. Summary judgment is entered in favor of Plaintiff on its Complaint for Declaratory Judgment; and

2. Defendant Christopher Court's Cross Motion for Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___10/20/2022___

Mary Gay Kennedy, Justice
Maine Superior Court